UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

Plaintiff,

Case No. 26-cv-____________

v.

1. 2900 Pillsbury Avenue, Minneapolis, Minnesota,
2. 2906 Pillsbury Avenue, Minneapolis, Minnesota, and
3. 211 29th Street West, Minneapolis, Minnesota

Defendants.

# VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The plaintiff, United States of America, through its attorneys Colin McDonald, Assistant Attorney General, Robert Austin Wells, Trial Attorney, and Daniel N. Rosen, United States Attorney for the District of Minnesota, in a civil cause of action for forfeiture, alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## I. NATURE OF THE ACTION

1. This is an action to forfeit and condemn the defendants *in rem* to the use and benefit of the United States of America pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C) for violations of 18 U.S.C. §§ 1343, 1349, 1956, and 1957.

## II. THE DEFENDANTS *IN REM*

2. The defendants *in rem* are the following parcels of real property:

   a. The real property and premises located at **2900 Pillsbury Avenue, Minneapolis, Minnesota 55408**, legally described as:

The South 15 feet of the East 99 feet of Lot 1 and the North 15 feet of the East 99 feet of Lot 2, Block 4, Lindley and Lingenfelter's Addition to Minneapolis and that part of Lot 1, Block 4, Lindley and Lingenfelter's Addition to Minneapolis, described as follows: Commencing at the Northeast corner of said Lot 1; thence West 99 feet; thence South 30 feet; thence East 99 feet; thence North 30 feet to the point of beginning, Hennepin County, Minnesota with property parcel ID number 34-029-24-34-0252,

b. The real property and premises located at **2906 Pillsbury Avenue, Minneapolis, Minnesota 55408**, legally described as:

The South 30 feet of the East 99 feet of Lot 2, Block 4, Lindley and Lingenfelter's Addition to Minneapolis, Hennepin County, Minnesota with parcel ID number 34-029-24-34-0070

c. The real property and premises located at **211 29th Street West, Minneapolis, Minnesota 55408**, legally described as:

The East 33 feet of the West 66 feet of Lots 1 and 2, Block 4, Lindley and Lingenfelter's Addition to Minneapolis, Hennepin County, Minnesota with parcel ID number 34-029-24-34-0068.

(collectively, "the Defendant Real Property.")

3. The Defendant Real Property has not been seized but it is within the jurisdiction of this Court. The United States does not request authority from the Court to seize the Defendant Real Property at this time. The United States will, as provided by 18 U.S.C. §§ 985(b)(1) and (c)(1):

a. Post notice of this action and a copy of the Complaint on the Defendant Real Property;

b. Serve notice of this action on each owner of the Defendant Real Property and any other person or entity who may claim an interest in the Defendant Real Property, along with a copy of this Complaint; and

c. File a notice of *lis pendens* in the county real property records.

## III. JURISDICTION AND VENUE

4. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant Real Property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. This Court has *in rem* jurisdiction over the Defendant Real Property under 28 U.S.C. § 1355(b). As is set forth below, this property was acquired with fraud proceeds, and it was involved in and is traceable to funds involved in money laundering transactions.

6. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1355(b)(1) because acts or omissions giving rise to the forfeiture occurred in this District, and pursuant to 28 U.S.C. § 1395 because the Defendant Real Property is located in this District.

## IV. FACTS

### A. Overview

7. Over the past few years, individuals and companies in Minnesota ("the conspirators") engaged in a large-scale scheme to fraudulently obtain and misappropriate federally funded child nutrition programs. The scheme was carried out by individuals who owned and operated companies purportedly in the business of providing federally funded free meals to underprivileged children and adults, including during the global Covid-19 pandemic.

8. The conspirators received tens of millions of dollars in federal funds for use in providing nutritious meals to underprivileged children and adults. A small fraction of

this money was used to feed children. Instead, conspirators misappropriated the money and used it to purchase real property, automobiles, and other luxury items. To date, the conspirators have stolen millions of dollars in federal funds.

9. Through this case, the United States seeks the forfeiture of real property that was purchased with the proceeds of that conspiracy to commit wire fraud, and which was involved in, or is traceable to property involved in, the conspiracy to commit money laundering with respect to the proceeds of that fraud.

**B. Background of the Scheme**

10. This complaint relates to an ongoing investigation into a scheme to defraud U.S. Department of Agriculture ("USDA") programs that provide federal funding to nutrition programs for children and low-income individuals across the nation. The USDA operates two such programs—the Summer Food Service Program and the Child and Adult Care Food Program.

11. The Summer Food Service Program ("SFSP") is a federal program designed to ensure that low-income children continue to receive nutritious meals when school is not in session. SFSP reimburses non-profits and other entities that serve meals and snacks to low-income children.

12. The Child and Adult Care Food Program ("CACFP") is a federal program that provides reimbursements for nutritious meals and snacks to eligible children and adults who are enrolled for care at participating childcare centers, day care homes, and adult day care centers. CACFP also provides reimbursements for meals served to children and youth

participating in afterschool care programs, children residing in emergency shelters, and adults over the age of 60 or living with a disability and enrolled in day care facilities.

13. The SFSP and CACFP (together, the "Federal Child Nutrition Programs") operate throughout the United States. The USDA's Food and Nutrition Service administers the programs at the national and regional levels by disbursing federal funds to state governments, which provide oversight over the Federal Child Nutrition Programs.

14. Within each state, the Federal Child Nutrition Programs are administered by the state department of education or an alternate state-designated agency. In Minnesota, the programs are administered by the Minnesota Department of Education ("MDE").

15. Locally, meals funded by the Federal Child Nutrition Program are served at sites such as schools or daycare centers. Each site must be sponsored by a public or private non-profit organization that is authorized to participate in the Federal Child Nutrition Programs ("Sponsors"). Sponsors seeking to participate in the Federal Child Nutrition Programs are required to submit an application to the MDE for approval for each site from which they intend to operate Federal Child Nutrition Programs. Sponsors are responsible for monitoring each of their sites and preparing reimbursement claims for their sites.

16. Federal Child Nutrition Program funds are required to be used to provide nutritious meals and food to children and low-income individuals. *See* 7 C.F.R. § 225.15(a)(4) ("All Program reimbursement funds must be used solely for the conduct of the nonprofit food service operation.").

17. Historically, the Federal Child Nutrition Programs have generally functioned through the provision of meals to children involved in educational-based programs or

activities. During the Covid-19 pandemic, however, the USDA waived some of the standard requirements for participation in the Federal Child Nutrition Program. Among other things, USDA allowed for-profit restaurants to participate in the program. It also allowed off-site food distribution to children outside of educational program. At the same time, the state government's stay-at-home order and telework policies made it more difficult to oversee the program. According to MDE officials, this left the program vulnerable to fraud and abuse.

**C. Partners in Nutrition**

18. This complaint further relates to the investigation of the widespread diversion and misuse of Federal Child Nutrition Program funds during the Covid-19 pandemic.

19. Partners in Nutrition ("PIN") was a non-profit organization that sponsored federal child nutrition programs and knowingly defrauded the federal government out of millions of dollars during and after the Covid-19 pandemic in violation of federal law.

20. Taking advantage of temporary waivers in federal child nutrition programs that followed the Covid-19 pandemic, PIN sponsored entities that submitted fraudulent reimbursement claims and fake documentation. PIN submitted those claims to MDE for reimbursement, knowing that the claims were fraudulent. And PIN profited greatly.

21. In January 2022, the Justice Department unsealed several search warrants concerning its investigations into fraud occurring in Minnesota involving businesses and individuals involved in the Federal Child Nutrition Programs. MDE was concerned about the massive increase in Federal Child Nutrition Program funds going to sites sponsored by

PIN as well as the large increase in the number of sites under PIN sponsorship and immediately took steps to suspend any further payments to PIN.

22. On December 4, 2023, MDE issued a deficiency notice to PIN concerning the submission of false and fraudulent claims by several of its sponsored sites. In that notice, MDE explained that it learned about the fraudulent activity through a federal investigation that revealed how numerous sites submitted fraudulent claims to PIN. Following administrative procedures, MDE ultimately terminated PIN from CACFP and disqualified PIN from future participation in Federal Child Nutrition Programs. The Minnesota Court of Appeals affirmed the termination and disqualification on June 16, 2025. *Partners in Nutrition*, No. A24-1195, 2025 WL 1682623 (Minn. Ct. App. June 16, 2025).

23. Despite its oversight obligations as a sponsor, PIN ignored fraud by many of its food distribution partners. PIN submitted thousands of monthly claims to MDE based on purported service of millions of meals to children even though those meals were never actually served to Minnesota children. Although the submission of claims to MDE was premised on the actual provision of meals, PIN submitted claims to MDE for meals that were never provided.

24. On September 24, 2026, the State of Minnesota sued PIN in Hennepin County for PIN's "widespread failure to properly act as a responsible gatekeeper to taxpayer funds." *Minnesota Attorney General Keith Ellison v. Partners in Nutrition*, Case No. 27-CV-26-16476 in the Fourth Judicial District Court of Hennepin County at Index #1. PIN entered into a proposed consent judgment with the State of Minnesota, which was

also filed on September 24. *Id.* at Index #7. The Honorable State District Judge Joseph Klein scheduled a hearing for December 15, 2026, to consider the parties' proposed consent judgment. *Id.* at Index #8.

25. As set forth below, several conspirators used various entities to generate fraudulent invoices to PIN, which were typically sent through electronic means, through which they could receive payments for services and food that were not provided, and through which they could launder the proceeds of that fraud. This civil forfeiture complaint is brought against real property that was purchased with the proceeds of that fraud scheme and with funds traceable to money laundering.

**D. The Relevant Participating Entities**

26. The conspiracy described herein is extensive and includes many people and entities. Because this is an *in rem* complaint filed only against certain specific parcels of real property, only those conspirators who are most pertinent to the Defendant Real Property are addressed herein.

**E. The Addis Foundation and Related Entities**

27. The Addis Foundation Community Services ("the Addis Foundation") was a purported food distribution organization that was sponsored by PIN. The Addis Foundation was registered as a nonprofit corporation with the State of Minnesota in December 2020. Its incorporators were Mesgana Weldemariam, Ibrahim Demmaj, and Saba Rashad Abdulahi. Secretary of State records list 6703 13th Street Court in Oakdale, Minnesota as the Addis Foundation's mailing address. Seble Lemma, Weldemariam's wife, was an authorized representative for the Addis Foundation. At one time or another,

Weldemariam, Lemma, and Demmaj were signatories for the Addis Foundation's bank accounts.

28. The Addis Foundation registered as a Tax Exempt Organization with the Internal Revenue Service with an effective date of December 18, 2020.

29. The Addis Foundation represented that it was a "non-profit organization that provide[d] STEM educational programming and nutritious meals." Despite this representation, the Addis Foundation's only source of funding was from Federal Child Nutrition Program Funds.

30. The Addis Foundation Community Services was involuntarily dissolved on January 25, 2022. When the entity was reinstated two days later, it identified the Addis Foundation as its president.

31. The Addis Foundation had its Tax Exempt Status with the Internal Revenue Service revoked in May 2023. The entity failed to file any of the required annual reporting forms (form series 990).

32. A group of individuals who own or are associated with the Addis Foundation participated in a fraudulent scheme to obtain and misappropriate millions of dollars in Federal Child Nutrition Program funds. During 2020 and 2021, these individuals created several companies for use in carrying out these schemes and to disguise the uses and sources of the funds. They claimed to be feeding meals to thousands of children a day, for which they claimed reimbursements for more than $13 million under the sponsorship of PIN.

33. According to bank records, these entities submitted claims for reimbursement under Federal Child Nutrition Programs without having actually provided such services. Over the course of approximately 16 months in 2021 and 2022, the Addis Foundation submitted claims to PIN and MDE falsely claiming to have served over 5.6 million meals to Minnesota children.

34. After receiving payment for services not provided, the Addis Foundation distributed Federal Child Nutrition Program funds to related entities, including an entity owned by one of the Addis Foundation's listed officers, that misappropriated most of this money and used it to purchase real estate, cars, and other luxury items.

**F. Fresh Point, LLC**

35. Fresh Point, LLC was a purported food distributor that contracted with The Addis Foundation. Faiza Jama was named as the organizer of Fresh Point. Fresh Point was registered with the State of Minnesota on June 10, 2021. The reported mailing address for Fresh Point was a one-bedroom apartment in Minneapolis in Bottineau Commons (1808 University Avenue NE), which operates under the Low-Income Housing Tax Credit Program. There is no space in such an apartment to operate a full-scale food and grocery program.

36. On June 10, 2021, the same day it registered with the State, Fresh Point opened a checking account at Bridgewater Bank, x7994. That bank account was closed on July 8, 2021, having been opened for less than a full month.

37. On or about June 23, 2021, Fresh Point received $796,485.60 in its Bridgewater Bank account x7994 from the Addis Foundation for purported reimbursement

of funds for food services provided to Minnesota children. But based on a review of bank records, which show a lack of expenditures, Fresh Point provided no food services of any kind to Minnesota children in its two weeks of existence (commencing June 10, 2021) before receiving this substantial sum from the Addis Foundation.

**G. Senaa, Inc.**

38. Senaa, Inc. is a for-profit domestic Minnesota corporation incorporated in December 2020. Its registered agent is Saba Abdulahi. Senaa operated as a purported food distributor that contracted with The Addis Foundation.

39. In the time relevant to this complaint, Senaa received numerous payments from the Addis Foundation for purported food services that were nowhere close to the amounts actually paid out to purchase foods. Bank records for Senaa's Bridgewater Bank account x3853 show deposits of $650,000 on April 27, 2021 and $513,141.40 on June 16, 2021.

40. On May 18, 2021, Senaa issued two checks to Weldemariam for purported loan payments in the amount of $48,054.57 each. Weldemariam deposited one of the checks into his personal Wells Fargo account on May 24, 2021 and the other on June 22, 2021.

**H. Marcon, LLC**

41. Marcon, LLC was an entity licensed with the State of Minnesota on June 2, 2021. The organizers of Marcon were Mesgana Weldemariam and Seble Lemma. Secretary of State records for Marcon list 6703 13th Street Court North in Oakdale—the same registered office address as the Addis Foundation—as Marcon's mailing address.

42. On July 8, 2021, Marcon opened a new checking account at Wells Fargo, x7695 with a $100,000 deposit from Marcon's Bridgewater Bank checking account x9164. That Bridgewater account was funded with deposits of $45,000 on June 28, 2021 and $50,000 on July 1, 2021 from Weldemariam's personal Wells Fargo account, x0390 and a cash deposit of $5,000 on June 28, 2021. That Bridgewater account was closed on July 8, 2021 following the $100,000 withdrawal that was transferred to Marcon's Wells Fargo account x7695.

**I. V-Family, LLC**

43. V-Family, LLC was an entity licensed with the State of Minnesota in September 2013. Its registered agent and organizer was Seble Lemma. The organizer's address was 6703 13th Street Court in Oakdale. The LLC was administratively terminated in March 2018 after failing to file for an annual renewal.

44. Both Weldemariam and Lemma were signatories on V-Family's bank accounts at Wells Fargo: x4161, a checking account; and x7660, a savings account.

**J. Alpha Auto Repair, LLC**

45. Alpha Auto Repair, LLC is an entity licensed with the State of Minnesota in March 2012. Mesgana Weldemariam is listed as the manager of Alpha Auto, and the registered office address is 6703 13th Street Court North in Oakdale. Its principal office address is 213 West 29th Street in Minneapolis, near the corner of 29th Street and Pillsbury Avenue. Before Marcon's purchase of the Defendant Real Property, Alpha Auto comprised a singular parcel at the corner of 29th Street and Pillsbury Avenue in Minneapolis.

## V. THE DEFENDANT REAL PROPERTY

46. Fresh Point used Federal Child Nutrition Programs funds to purchase the three contiguous parcels that comprise the Defendant Real Property: 2900 Pillsbury Avenue, 2906 Pillsbury Avenue, and 211 29th Street West, all in Minneapolis, Minnesota. These three parcels are immediately adjacent to Alpha Auto, Weldemariam's business:




47. Despite largely funding the purchase, Fresh Point was not an actual party to the purchase: the Defendant Real Property was purchased by Marcon.

48. Bank records show that on or about July 2, 2021, Fresh Point wired $400,000 from its account at Bridgewater Bank to Land Title, Inc. The wire transfer records indicated that the funds were for the purchase of the Defendant Real Property.

49. The preceding day, July 1, 2021, V-Family (Lemma) deposited five separate checks from Fresh Point's Bridgewater Bank account totaling $51,550.30 into V-Family's Wells Fargo checking account x4161. The memo line for each check indicated the checks

were for "car rental." From those deposits, Weldemariam transferred $26,000 to Marcon's Wells Fargo account x7695 on July 16, 2021 and applied those funds towards a cashier's check used at the closing for the Defendant Real Property.

50. Marcon's purchase of the Defendant Real Property closed on July 16, 2021 for total of $516,058.50 including fees and expenses. The purchase money comprised of:

- $10,000 in earnest money wired from Weldemariam's personal checking account at Wells Fargo ending in x0390 on June 3, 2021;
- $400,000 wired directly from Fresh Point's Bridgestone Bank account x7994 to the title company on July 2, 2021;
- $106,000 cashier's check from Marcon's Wells Fargo account x7695; and
- $58.00 in cash.

51. The funds used by Fresh Point, Weldemariam, Lemma, and Marcon to purchase the Defendant Real Property in Marcon's name were derived from Federal Child Nutrition Program funds and are traceable to the fraud and money laundering scheme described above.

## VI. BASIS FOR FORFEITURE

### COUNT 1 -
### ALL DEFENDANTS
### 18 U.S.C. § 981(A)(1)(C) for Violations of 18 U.S.C. §§ 1343 and 1349

52. The actions described above constitute wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349. The Addis Foundation, by and through Fresh Point and Marcon, submitted fraudulent claims to PIN for reimbursement

under Federal Child Nutrition Programs. Relying on the truthfulness of these false representations (or not scrutinizing them in any way), PIN paid The Addis Foundation, which, in turn, paid Fresh Point, which in turn funded Marcon's purchase of the Defendant Real Property.

53. Civil forfeiture of the proceeds of violations of wire fraud and conspiracy to commit wire fraud, is authorized by 18 U.S.C. § 981(a)(1)(C). More specifically, Section 981(a)(1)(C) authorizes forfeiture of "any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." Section 1956(c)(7)(A) defines the term "specified unlawful activity" as including "any act or activity constituting an offense listed in section 1961(1) of this title." Section 1961(1) includes violations of 18 U.S.C. § 1343 in its definition of racketeering activity while Section 981(a)(1)(C) expressly includes conspiracy to commit any such offense.

54. The Defendant Real Property constitutes, and is derived from, proceeds of wire fraud involving federally funded child nutrition programs, and a conspiracy to defraud the United States federally funded child nutrition programs, and are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

**COUNT 2**
**ALL DEFENDANTS**
**18 U.S.C. § 981(A)(1)(A) – for Violations of 18 U.S.C. §§ 1956 and 1957**

55. Pursuant to 18 U.S.C. § 981(a)(1)(A), the United States is authorized to forfeit "any property, real or personal, involved in a transaction . . . in violation of section 1956 [or] 1957… of this title, or any property traceable to such property."

56. A violation of 18 U.S.C. § 1956 occurs when a person conducts or attempts to conduct a financial transaction knowing that it involves the proceeds of a specified unlawful activity when the transaction is designed in whole or part "to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of the specified unlawful activity; or . . . to avoid a transaction reporting requirement under State or Federal law."

57. 18 U.S.C. § 1957(a) prohibits among other things, knowingly engaging in a monetary transaction in criminally derived property of a value of more than $10,000, when such property derived from a specified unlawful activity.

58. Wire fraud and conspiracy to commit wire fraud are specified unlawful activities pursuant to 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1).

59. Marcon used more than $10,000 of illicit funds to purchase the Defendant Real Property.

60. The Defendant Real Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because they were each involved in, or are traceable to property involved in, money laundering transactions in violation of 18 U.S.C. §§ 1956 and 1957.

## VII. POTENTIAL CLAIMANT

61. The known potential claimant to the Defendant Real Property is:

Marcon, LLC
6703 13th Street Court North
Oakdale, Minnesota 55128

The United States will also publish notice of this suit consistent with the Federal Rules of Civil Procedure, specifically Supplemental Rule G.

## VIII. CLAIM FOR RELIEF

62. The United States requests that the Court issue a warrant for the arrest and seizure of the Defendant Real Property, and that after the search and seizure warrants are executed, notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the Defendant Real Property, that the Defendant Real Property be forfeited and condemned to the United States of America, that the United States be awarded its costs and disbursements in this action, and that the Court order any other and further relief as this Court deems proper and just.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that:

A. Notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the Defendant Real Property, including by posting by the United States Marshal or his designee in accordance with 18 U.S.C. § 985(c)(1)(B), and by publication on the official government internet site www.forfeiture.gov for at least 30 consecutive days in accordance with Supplemental Rule G(4)(a);

B. All persons having any interest in or right to the Defendant Real Property be advised to timely file a verified claim identifying such interest or right in this court as required by Rule G(5)(a) and 18 U.S.C. § 983(a)(4)(A) and to file an answer to this Verified Complaint for Forfeiture or motion under Federal Rule of Civil Procedure 12 in the manner required by the provisions of Rule G(5)(b) of the Supplemental Rules and 18 U.S.C. § 983(a)(4)(B). Any person filing a verified claim of interest or right and/or an answer shall serve a copy of same on the undersigned Trial Attorney for the United States;

C. The Defendant Real Property be condemned and forfeited to the United States;

D. The United States be awarded its costs and disbursements in this action;

E. The Court issue a Writ of Entry for the inspection and inventory of the Defendant Real Property; and

F. The court order any such other and further relief as it deems proper.

Dated: 10-19-2026

DANIEL N. ROSEN
United States Attorney

COLIN M. MCDONALD
Assistant Attorney General
National Fraud Enforcement Division

*/s/ Robert Austin Wells*
ROBERT AUSTIN WELLS
Trial Attorney
Asset Recovery Section
National Fraud Enforcement Division
United States Department of Justice
Texas Bar No. 24033327
110 N. College, Suite 700
Tyler, Texas 75702
(202)288-9475
robert.wells3@usdoj.gov

CRAIG R. BAUNE
Attorney ID No. 331727
Assistant United States Attorney
600 United States Courthouse
300 South Fourth Street
Minneapolis, Minnesota 55415
Phone: 612-664-5600
craig.baune@usdoj.gov

**VERIFICATION**

I, Travis Wilmer, verify and declare under penalty of perjury as follows:

I am and have been a Special Agent with the Federal Bureau of Investigation since November 8, 2021. I have read the foregoing Verified Complaint *In Rem* and know the contents thereof, and the matters contained in the Verified Complaint are true to my own knowledge, except that those matters not within my knowledge are alleged on information and belief, and I believe those matters to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information provided to me by other law enforcement agencies and officers, and information I have learned by reviewing reports prepared by other law enforcement agencies and officers, as well as my investigation of this case, as an FBI Special Agent.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: 10-19-2026

*/s/ Travis Wilmer*
TRAVIS WILMER, Special Agent
Federal Bureau of Investigation